JOHN S. WILLIAMS

Trustee in Bankruptcy of the Estate of Alton G. Crockett

*vs.*

NOYES & NUTTER MANUFACTURING COMPANY.

Piscataquis.    Opinion December 5, 1914.

*After Acquired Property.    Bankruptcy.    Creditors.    Custody of the Law.    Duress.*
*Intention of Parties.    Mortgage.    Possession.    Replevin.    Trover.*
*Trustee.*

1.  The rights of all parties depend upon the language used in a mortgage in reference to after acquired property, and the acts of the parties as declared by the record.

2.  At common law, a mortgage of chattels not then in existence was invalid, but it has now become a settled principle in this State that a person may mortgage after acquired property.

3.  As between the parties, a mortgage upon goods which authorizes the mortgagor to sell them and with the proceeds of such sale to purchase other goods to take their place, will be upheld.

4.  The intention of the parties as gathered from the language of all parts of the agreement considered in relation to each other, and interpreted with reference to the situation of the parties, and the manifest·object they had in view must always be allowed to prevail, unless some principle of law, or sound public policy, would thereby be violated.

5.  When the trustee is appointed, his title to the bankrupt's estate relates back to the date of the adjudication, and he takes the property of the estate subject to all equities, liens and incumbrances existing against it in the hands of the bankrupt.

6.  When the trustee took possession, the property was then in the custody of the law, and could not be removed from that custody by any private person, or by any process issuing out of this Court.

On report.   Judgment for plaintiff for $460.64.

This is an action of trover by the plaintiff, the trustee in bankruptcy of the estate of Alton G. Crockett, against Noyes and Nutter Manufacturing Company, mortgagee under a mortgage given by said Crockett, dated September 10, 1910, of his stock of goods, fixtures, accounts, etc.   On July 7, 1913, Crockett was adjudicated a bankrupt, and the plaintiff was appointed trustee of his estate and took possession of the bankrupt's estate.   The defendant, upon refusal of the trustee to deliver said property, forcibly took the same from the plaintiff and sold them.   Plea, general issue.   At the conclusion of the evidence, the case was reported to the Law Court for determination, upon so much of the evidence as is legally admissible.

The case is stated in the opinion.

*John S. Williams,* for plaintiff.

*C. W. Hayes,* for defendant.

SITTING:   SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

HANSON, J.   Action of trover brought by the plaintiff as trustee in bankruptcy of the estate of Alton G. Crockett, reported to this Court for determination of the rights of the parties.

On September 10, 1910, Alton G. Crockett mortgaged his stock of goods, fixtures and accounts to the defendant to secure an indebtedness of $759.18.   The value of the mortgaged property was then about $500.   The mortgage contained the following provision as to after acquired merchandise:   ''It is understood that the said Crockett is to have the right to sell at retail in the ordinary course of business from said stock replacing the same with new stock and additions from time to time, keeping the stock to its present value and insured for the benefit of the said mortgagee; and the said Crockett hereby sells and conveys to the said Noyes & Nutter Mfg. Co. all and singular, all additions to merchandise, metals and stock, or accounts hereafter due for labor or material; and the same to be the property of the said Noyes & Nutter Mfg. Co., their successors or assigns. It being distinctly understood that this mortgage and conveyance covers all after acquired property; added to said business in any manner after the date of this mortgage or during the existence of said mortgage, to Noyes & Nutter Mfg. Co.   To have and to hold

all and singular, the said goods and chattels, property rights and interests to the said Noyes & Nutter Mfg. Co., their successors and assigns."

The parties continued their business relations until July 7, 1913, when Mr. Crockett was adjudicated a bankrupt. He then owed the defendant $1229.69. The plaintiff was appointed trustee, qualified as such officer, and thereupon took possession of the merchandise in question. The inventory filed amounted to $921.28, which was later increased by sales from the stock not reported, aggregating $82.34, making $1003.62, as the value of the bankrupt estate. The mortgage was not foreclosed, and the bankrupt was in possession of the property at the date of adjudication, and delivered the same to the trustee.

The defendant, by its attorney, made demand upon the trustee for the goods, and, upon refusal, took the same forcibly from the plaintiff, and sold them.

Among the admissions and agreements made by counsel, two only are material:

1. "That in case judgment shall be rendered for the plaintiff, the damages shall be for the sum for which the defendant sold the goods, to wit, $460.64."

2. "While the mortgage never has been foreclosed, the plaintiff waives that omission."

The plaintiff contends that (1) "The mortgage is void because it was executed under duress." (2) "The terms of the mortgage are not sufficient to hold the property acquired subsequent to the execution of the mortgage, the trustee having taken possession thereof before the mortgagee, and Mr. Crockett having been adjudicated bankrupt." (3) The trustee's title is superior to that of the mortgagee, and the property passes to him for the benefit of the creditors of the bankrupt estate.

The defendant contends (1) that there was no duress, and (2) that while the mortgage does not say in terms that new goods shall be bought with the proceeds from the sale of old, that it is the plain intent of the parties and the necessary construction, because it says that Crockett had the right to sell from the stock, replacing the same with new stock, keeping the stock up to its present value, and cites *Bell* v. *Jordan*, 102 Maine, 67, and *Union Water Power Co.* v. *Lewiston*, 95 Maine, 171, as supporting its contention "that in the construction

of contracts, there is one fundamental rule or consideration, which is paramount to all others, and that is, that the intention of the parties, as gathered from the language of all parts of the agreement, considered in relation to each other, and interpreted with reference to the situation of the parties, and the manifest object which they had in view, must always be allowed to prevail, unless some established principle of law, or sound public policy would thereby be violated;" and further that "it is the manifest object of the parties in making this mortgage, that the stock of goods should be kept up to its present value, and the only possible way to do it lawfully and properly would be to use the proceeds of the sale for that purpose;" and that the mortgage under consideration "does not differ from the ordinary mortgage of this kind where authority to sell is given to the mortgagor, and he covenants to use the proceeds thereof to purchase new goods of like kind, and to keep the stock up to a given value." (3) That the title to the goods was in the defendant, who had lawful right to possession of the same, as between the parties, and as against any third party who has not acquired superior equities by attachment or otherwise and the taking of possession. In effect defendant claims that the plaintiff as trustee acquired no right to possession of the goods, and that the burden of proving the kind, quality and amount of. goods in stock, and whether old or acquired after the date of the mortgage, is upon the plaintiff; that failing to do this, and for the further reason that the old and new goods were intermingled in such manner as to render division impossible, the plaintiff cannot recover.

The plaintiff's first contention is not supported by the evidence. The record discloses an attempt on the part of the defendant's agent to get security for a running account. Two demands for payment, at least, had been made by the defendant. The direct testimony on this point follows:

"Q. And what did Mr. Nutter tell you in regard to signing this mortgage?

A. He was prepared to close me up unless I did sign the mortgage."

The cross-examination brings out general statements of "threats," but the words used appear to have been the same in substance as given in direct examination. We are unable to find that there was duress. The defendant went about the business in the usual way, employing language expressing his intention to sue and attach if

security was not given. The bankrupt elected to make a mortgage, and for about three years thereafter carried on his business with the mortgage on his stock. The time involved negatives the claim of fraud or duress, and serves as a waiver of any right to now set up either claim.

The rights of all the parties therefore depend upon the language used in the mortgage in reference to after acquired property, and the acts of the parties as disclosed by the record.

While at common law a mortgage of chattels not then in existence was invalid, *Abbott* v. *Goodwin*, 20 Maine, 408; *Head* v. *Goodwin*, 37 Maine, 181; *Morrell* v. *Noyes*, 56 Maine, 458, it has now become a settled principle in this State that a person may mortgage after acquired property. *Abbott* v. *Goodwin*, supra, and cases cited; and as between the parties a mortgage upon goods which authorizes the mortgagor to sell them and with the proceeds of such sale to purchase other goods to take their place, will be upheld. *Allen* v. *Goodnow*, 71 Maine, 420; *Deering* v. *Cobb*, 74 Maine, 332, 334. Something more than the authority given in the mortgage under consideration, or the actual acquiring of the new property, is necessary where the right of third parties intervene, as in the case at bar. Where the power sought to be created is ineffectual, the mortgagee must be in actual possession of the property mortgaged if he would defeat the claims of other creditors. Such mortgage to have the effect contended for by the defendant must contain apt words to designate the power to sell from the stock so mortgaged, and the further stipulation that the proceeds of such sale shall be applied to the purchase of new articles of like kind to those sold, the chattels so purchased to become substituted for those sold at the instance and under the authority of the mortgagee so that the legal title to them may be said to pass to the mortgagee as effectually as if he had himself made the sale, by assent of the mortgagor, and with his own hand replenished the res. The mortgagor by so doing simply executes a power, performs a trust created by the mortgage, and thereby neither depletes the security nor defrauds his other creditors. *Abbott* v. *Goodwin*, 20 Maine, 408; *Sawyer* v. *Long*, 86 Maine, 541.

It is not contended that the mortgage meets the requirements of the decided cases upon this element of the case at bar, but counsel urges that the mortgage should be so construed, as that is the plain intent of the parties and necessary construction, because it says that

Crockett had the right to sell from the stock, replacing the same with new stock, keeping the stock up to its present value, and relies upon the doctrine of *Bell* v. *Jordan*, 102 Maine, 67, and *Union Water Power Co.* v. *Lewiston*, 95 Maine, 171, supra. The rule of construction emphasized in the cases cited, that the intention of the parties as gathered from the language of all parts of the agreement, considered in relation to each other, and interpreted with reference to the situation of the parties, and the manifest object they had in view, must always be allowed to prevail, unless some established principle of law, or sound public policy, would thereby be violated, is peculiarly applicable in the case at bar.

As bearing upon the intention of the parties, a reading of the last clause of the stipulation under consideration demonstrates that the defendant did not rely or intend to rely upon the agreement to "sell from the stock, replacing the same with new stock," but went far beyond the purport of such stipulation even, and caused his mortgage to include these words:  "It being distinctly understood that this mortgage and conveyance covers all after acquired property, added to said business in any manner after the date of this mortgage, or during the existence of said mortgage to Noyes & Nutter Mfg. Co., their successors and assigns."  In view of the many decisions of this Court sustaining a mortgage of after acquired property when such mortgage is properly drawn, when the rights of the parties, and particularly the rights of interested third parties, may be definitely known from inspection of the mortgage, or a record thereof, we hold that the defendant in any event could take under his mortgage only such goods or fixtures as he has shown title to, which were in existence at the date of the mortgage, and those substituted for articles sold by purchase from the proceeds of sales from such mortgaged stock. To hold otherwise would be a violation of an established principle of law, and sound public policy. *Sawyer* v. *Long*, supra; *Allen* v. *Goodnow*, 71 Maine, 420; *Deering* v. *Cobb*, 74 Maine, 332; *Williamson* v. *Neally*, 81 Maine, 447; *Dexter* v. *Curtis*, 91 Maine, 505.

The trustee in bankruptcy had taken possession of the bankrupt's stock from the bankrupt.  The defendant dispossessed the trustee. Had he that right?

Where once the trustee is appointed, his title to the bankrupt's estate relates back to the date of the adjudication.  5 Cyc., 342.  A trustee takes the property of the estate subject to all equities, liens

and incumbrances existing against it in the hands of the bankrupt. The plaintiff having taken possession, the property was then in the custody of the law, and could not be removed from that custody by any private person, or by any process issuing out of this Court. In *Crosby* v. *Spear*, 98 Maine, 542, two actions of replevin to recover possession of certain store fixtures which were in a bankrupt's possession at the time of his adjudication in bankruptcy, it was held that when a Court, State or Federal, has once taken into its possession a specific thing, no Court, except one having a supervisory control or superior jurisdiction in the premises, has a right to interfere with or change that possession. *Jones on Mortgages*, 6th ed., 1231-1232; *Carney* v. *Averill*, 110 Maine, 172. See *Chase* v. *Denny*, 130 Mass., 566; *Covell* v. *Heyman*, 111 U. S., 176; *White* v. *Schloerb*, 178 U. S., 542.

The case shows that the defendant's interest in the stock could not exceed $500, one of the conditions being that the mortgagor shall keep the stock to its present value, and the value of the stock when mortgaged did not exceed $500. He took from the plaintiff goods of the value of $1003.62, and disposed of them. Aside from the question of amount of the original stock remaining, and goods replaced, the defendant must account to the trustee for the excess in his hands over $500, which amount is greater than the judgment agreed upon.

But the plaintiff may recover upon other grounds. The trustee was an officer of the law; he had possession of the goods, and his possession was the possession of the law. The defendant's right to follow the property, if it ever existed, was suspended on the appointment of the trustee. The trustee had acquired superior rights by virtue of his office. The defendant, not having possession of the goods, and having no right to possession as against the trustee, had the burden of showing title to the goods claimed by it under the mortgage, viz., such goods as were in existence at the date of the mortgage, and the goods, if any, substituted for articles sold by purchase from the proceeds of sales. It did not attempt to show either. It could not hold after acquired goods because it did not have possession before the adjudication in bankruptcy. As to original goods on hand at the date of the mortgage, if any, the record is silent, and the trustee, who otherwise might have been able to determine the rights of all parties, was deprived of the only means of

accomplishing that end by the act of the defendant in removing the goods and placing them beyond the reach of the trustee and all other parties in interest. The defendant, after such act, may not now invoke the aid of the Court under the rule relating to personal property intermingled wilfully or otherwise.

The case discloses that the bankrupt's business amounted to about $5,000 per year, that much of his stock was purchased upon credit from others than the defendant, and some goods were paid for in cash, that of the stock on hand at the date of bankruptcy proceedings, one-third had been received from the defendant and two-thirds from other sources,—the later purchased largely upon credit, and not from sales from the mortgaged stock, a condition so inconsistent with the claim of the defendant's right to recover that further comment is unnecessary, save to say that from the nature of the stock and the general business of the bankrupt, the stock having been subject to sale for about three years, the inference necessarily arises that no part of the original stock was left at the date of proceedings in bankruptcy. In accordance with the stipulation the entry will be,

*Judgment for the plaintiff for $460.64.*