## MORROW *v.* HAYES.

1. TAXATION—TAX NOT A DEBT—WORDS AND PHRASES.
   The term "debt," in its restrictive sense, is not inclusive of a tax.

2. SAME—CORPORATION OBLIGATED TO PAY TAX ALTHOUGH STOCK-HOLDERS CHANGE.
   The obligation of a corporation to pay an income and excess profits tax on its business was not at all affected by the sale of all of its capital stock before the tax became a lien, since the corporate entity continued and its liability remained regardless of change in its stockholders.

3. SAME—COVENANT TO PAY ALL DEBTS INCLUDED FEDERAL INCOME AND EXCESS PROFITS TAX.
   An agreement by the sellers of all of the capital stock of a hotel corporation to save the buyers "free and harmless from any and all indebtedness" existing against said corporation at that date, *held*, to include the Federal income and excess profits tax owing at the time of the sale, although it had not then become a lien upon the property.

4. FRAUD—NOTICE—BILLS AND NOTES.
   There was no fraud in the payment by plaintiffs, before they became due, of notes given by defendants and assumed by plaintiffs as part of the purchase price of all of the capital stock of a hotel corporation, where, at the time of the payment, plaintiffs had no knowledge of debts for the payment of which they held defendants liable, and who in turn had a right to look to the makers of the notes to pay same.

Error to Kent; Dunham (Major L.), J. Submitted January 30, 1924. (Docket No. 80.) Decided March 5, 1924.

Assumpsit by George F. Morrow and others against

Bert A. Hayes and others for breach of warranty in the sale of corporate stock.    Judgment for plaintiffs. Defendants bring error.    Affirmed.

*Elvin Swarthout,* for appellants.

*Travis, Merrick, Warner & Johnson,* for appellees.

WIEST, J.    The Hotel Virginia Company is a corporation operating a hotel at Columbus, Ohio.    January 31, 1919, W. E. Bayfield and A. C. Lloyd, owners of the entire capital stock of the corporation, sold and conveyed the stock to defendants Bert A. Hayes and John W. Barron, and covenanted that, "there is no existing indebtedness against the Hotel Virginia Company, except the sum of $400, balance due as subscription for stock in the Columbus Exposition Company," and agreed to save Hayes and Barron and their assigns "free and harmless from any and all indebtedness existing against the Hotel Virginia Company," at that date, except the $400.    September 30, 1919, defendants herein, owners of all the capital stock of the Hotel Virginia Company, sold and conveyed the stock to plaintiffs George F. Morrow and Fred M. Benner, with covenant and agreement as follows:

"The said parties of the first part jointly and severally hereby covenant with the said parties of the second part, and their executors, administrators and assigns that there are no valid and legal debts against the Hotel Virginia Company, except the sum of four hundred dollars ($400), being the balance due as a subscription for stock in the Columbus Exposition Company.

"Said parties of the first part further covenant and agree to save the said parties of the second part, and their successors, administrators and assigns harmless from any and all legal indebtedness against said the Hotel Virginia Company except the $400 aforesaid."

At such time plaintiffs Morrow and Benner paid

defendants $25,000 and gave them a note for $5,000 and assumed and agreed to pay notes amounting to $17,500, given by defendants to Bayfield at the time of their purchase.    These notes called for semi-annual payments of $2,500.    After the purchase by Morrow and Benner the other plaintiffs became stockholders. In January, 1920, and before the notes were due, plaintiffs paid the same, receiving a discount of $1,000 as an inducement.    February 20, 1920, the Hotel Virginia Company was notified by the collector of internal revenue that there was an income and excess profits tax liability due the United States for the year 1917, amounting to $3,064.10.    Upon defendants' refusal to pay such income and excess profits tax, and after an unsuccessful endeavor to have the same abated, plaintiffs paid the amount under protest, together with five per cent. penalty, and brought this suit to recover the amount so paid, planting right of recovery upon defendants' agreement of September 30, 1919.

Upon trial before the court plaintiffs recovered judgment for the amount so paid.    Defendants are in this court by writ of error.    Defendants claim the agreement does not cover taxes not a lien at the date of the agreement, because taxes are not a debt. Authorities are numerous to the effect that the term "debts," in its restrictive sense, is not inclusive of a tax, but such holdings are mainly in cases where the question has arisen between the government and individuals.    A good illustration of such holdings is found in *Baker* v. *City of East Orange,* 95 N. J. Law, 365 (111 Atl. 681), where a tax law permitted deduction from the valuation of personal property of all debts *bona fide* due and owing creditors residing in the State.    There the court refused to deduct the Federal estate tax, Federal income tax and State inheritance tax, saying:

"Is a tax a debt within the meaning of the statute? A tax, in its essential characteristics, is not a debt, nor in the nature of a debt.    A tax is an impost levied by authority of government.   *City of Camden* v. *Allen*, 26 N. J. Law, 398.    Taxes are, in legal contemplation, neither debts nor contractual obligations, but are, in the strictest sense of the word, exactions."

See, also, *Peter* v. *Parkinson*, 83 Ohio St. 36 (93 N. E. 197, Ann. Cas. 1912A, 751).    Holdings to the same effect might be multiplied for, as to the government, the courts have almost universally held that a tax is not a debt within the meaning of tax laws.    It will be noted that these holdings are planted on statutes and involve public policy and not contracts between private parties.    But such decisions do not dispose of the question of defendants' liability under their contract.

The term "debts" has no single meaning.    It takes shades of meaning from the occasion of its use and color from accompanying words.    It is clear that plaintiffs in purchasing the stock took the corporation freed from all liabilities except the $400 subscription. The corporate entity was under obligation of law to pay the income and excess profits tax on its business for the year 1917.    This obligation was not at all affected by sale of all of the certificates of stock before the tax became a lien, for the corporate entity continued and its liability remained regardless of change in its stockholders.    Here there was an obligation plaintiffs were required to pay; it arose before their purchase and was covered by defendants' agreement, unless the term "debts" is held to have been employed in its most restrictive sense.    If the contract does not plainly sense the particular meaning intended, then consideration may be given the facts and circumstances leading to the employment of the term "debts," and, if necessary, resort may be had to practical construction given thereto by the parties previous

to getting ready for a law suit.    It is clear, from the evidence, that the term "debts" was employed by the parties in its enlarged sense.    The purpose of the agreement was to make certain what the plaintiffs were buying and to save them harmless from undisclosed liabilities and obligations of the corporation.

In *Gilliam County* v. *Wasco County,* 14 Or. 525 (13 Pac. 324), it was said:

"Although in strict technical language a tax is not a debt, yet in an enlarged sense, whenever there is a duty to pay on any ground there is a debt."

In *Young* v. *Clute,* 12 Nev. 31, the question was whether an agreement to pay "all debts contracted by, and due or owing from said firm" * * * included taxes.    Held to include taxes.

In *Penn's Ex'r* v. *Penn's Ex'r,* 120 Ky. 557 (87 S. W. 306), a will directed that funeral expenses and debts be paid out of the personal estate, and this presented the question of whether taxes fell within the term "debts."

The court said:

"While taxes are not, strictly speaking, debts (which has been decided by this court in the case of *Jones* v. *Gibson,* 82 Ky. 561 [6 Ky. Law Rep. 628]), yet they are obligations or liabilities, and we are convinced that the testator used the word 'debts' intending to include all obligations and liabilities against his estate of every character."

In *Mariner* v. *City of Milwaukee,* 146 Wis. 605 (131 N. W. 442), a man succeeded in keeping his property off the assessment roll.    The court held:

"Taxes are debts due to the government which a property owner has no more right to withhold than the most sacred debt of a private nature."

Under the terms of the agreement, having in mind the purpose of the parties and the character of the transaction, the term "debts" must be held to cover

226—Mich.—20.

the obligation of the corporation to pay the government the income and excess profits tax for 1917. This holding is also supported by practical construction given the contract by defendants, in their payment, after their sale, of the income tax liability during the months they owned the stock.

It is claimed:

"There was no legal or moral obligation on the purchaser to pay this tax; and the government had not taken the necessary steps to make it a valid lien on the property of the Hotel Virginia Company."

At the time the tax was paid the government was pressing the obligation; plaintiffs had sought and been denied abatement and only paid under protest. Whether the tax at that time had become a lien upon the property of the hotel company or not is of no consequence for the corporate entity owed the tax and a filing of a lien under provisions of the Federal law would accomplish no more than protection of the government against subsequent purchasers in good faith. During the whole time the corporation did not change; as to the government and its rights the corporate entity remained the same. But it is said that, under the provisions of the Federal law, plaintiffs are such purchasers and they, therefore, paid an invalid claim. The government looks to the corporate entity for the tax and not to the stockholders of the corporation. Neither plaintiffs nor defendants were purchasers, within the meaning of the Federal law, exempting purchasers before lien from the payment of the tax. It is also said that the act of the plaintiffs, in paying the notes given by the defendants before the same were due, operated as a fraud upon defendants in preventing them from using the same as a leverage to force Mr. Bayfield to pay this tax obligation. At the time of such payment plaintiffs knew nothing about the tax; they had assumed and

agreed to pay the notes and they were not required to wait until the same fell due but had a right to pay them at any time. The defendants have somewhat overreached in making this claim, for it is inconsistent with the nature of their main defense. If defendants could look to Bayfield under Bayfield's agreement with them, then, surely, plaintiffs could look to defendants under like agreement.

We find no error and the judgment is affirmed, with costs to plaintiffs.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.