## CORINNA SEED POTATO FARMS, INC.

### *vs.*

### CORINNA TRUST COMPANY.

Penobscot.    Opinion December 22, 1925.

*A mortgage of chattels said to have a potential existence, as a crop to be grown by the mortgagor, stating the season when such crop is to be grown, and definitely describing the area of land on which the crop is to be grown, properly recorded, is a valid mortgage, creates a valid lien on the crop, and under such mortgagee has the right of possession after foreclosure, and in some cases before.*

*But an agreement which fails to state the season or fails to definitely describe the land on which the crop is to be grown, is nothing more than an executory agreement creating no lien on the crop.*

In the case at bar the agreement is an executory agreement only, under and by virtue of which the relation of the plaintiff to Buck Brothers is only that of an unsecured creditor.

On report.   An action of trover to recover the value of one thousand barrels of potatoes alleged to be the property of plaintiff but converted by defendant.  Plaintiff relied upon a written agreement given to it by Buck Brothers of Corinna to secure the payment of a debt for fertilizer sold by it to them, claiming that such written agreement was a chattel mortgage, or crop-mortgage, so-called, on the potatoes to be planted and grown by Buck Brothers subsequent to the date of the agreement.  Defendant contended that such agreement was not a chattel mortgage but an executory contract only, in that the area of land on which the crop was to be planted was not definitely stated in the written agreement, hence no lien on the potatoes was created under the agreement, and that the right of possession and title to the potatoes were in defendant at the time of the alleged conversion under two mortgages given it by said Buck Brothers.   Judgment for defendant.

The case sufficiently appears in the opinion.

*William B. Peirce and John S. Williams,* for plaintiff.

*Benjamin W. Blanchard,* for defendant.

SITTING:   WILSON, C. J., PHILBROOK, MORRILL, DEASY, BARNES, JJ.

BARNES, J.   On the eighth of April, 1924, Buck Brothers of Corinna, were indebted to both plaintiff and defendant in this case.

Indebtedness to the plaintiff was incurred for the purchase price of commercial fertilizer, spraying materials and insecticide, purchased and used to make a crop of potatoes during the season of 1923.

By a payment on October 19, 1923, debtors had reduced the debt to plaintiff to about $3,500.00 and had one thousand barrels of potatoes, more or less.

These they mortgaged to defendant by their mortgages, dated November 24, 1923 and January 30, 1924; and at the date first above written the potatoes appear to have been in the possession of the defendant, were demanded of the defendant by the plaintiff; delivery was refused, and this suit, an action of trover then brought.   What is defendant's title is of no moment.   A plaintiff in trover must prove title in himself or fail in the action.

Plaintiff claims title to the potatoes as mortgagee after having foreclosed a chattel mortgage, and offers in evidence a copy of the alleged mortgage, as follows:—"This memorandum of agreement made this sixth day of March, 1923 by and between the Corinna Seed Potato Farms, Inc., a corporation of Corinna, Maine, and Buck Brothers of Corinna, Maine, witnesseth:—

"1.   That the said The Corinna Seed Potato Farms, Inc., agree to sell and have this day bargained and sold to the said Buck Brothers, seventy-seven and one half tons of their Corinna Farms Special Potato Grower, guaranteed analysis, five per cent. Amm. eight per cent. available phos. acid and seven per cent. potash, for the sum of forty-nine dollars and fifty cents per ton in one hundred and twenty-five pound bags and two and one half tons of sixteen per cent acid phos. in one hundred and sixty-seven pound bags, at the price of twenty-four dollars per ton, all to be hauled by said Buck Brothers, from the premises of said corporation at said Corinna, Maine, at their convenience.

"2.   And the said corporation agrees to accept in payment for the said fertilizer and acid phos. so furnished, a certain number of barrels of Green Mountain potatoes grown from the strain of seed that Buck Brothers had from said corporation in the year 1922, which figured at two dollars per barrel of one hundred sixty-five pounds net

weight per barrel will equal the full purchase price of said fertilizers as set forth above, said potatoes to be dry and sound, free from frost, rot, scab, or wire worm holes and to be graded for grade U. S. Grade No. 1 and to be delivered on board cars or storehouse at said Corinna, Maine, at digging time, as said corporation may direct, said corporation agreeing to furnish a man to help load the cars or to take said potatoes in at storehouse, when so delivered, but the same are not to be delivered until they are suitable for shipping or storing and to have skin set and be ripe enough for shipment and are not to be delivered before September 20th, in any event, unless it is mutually agreed upon otherwise between the parties hereto.

"3.  And the said Buck Brothers hereby agree to purchase and accept delivery of the said fertilizer at the place mentioned and the time stated, and further agree in payment of the same that they will sell and deliver to the said corporation the Green Mountains as above stipulated at the time and place mentioned f. o. b. cars or storehouse as above stated, the same to be dry and sound and to be free from rot, scab or frost and wire worm holes and to be graded for Grade U. S. No. 1.

"And it is further agreed and mutually understood that in case of failure of the crop or if Buck Brothers fail to deliver to the above corporation a sufficient number of barrels of potatoes to pay the full purchase price of the said fertilizer as set forth, then the said Buck Brothers agree to pay on or before December 1st, 1923, a sufficient sum of money to make up for any deficiency between the full amount of the purchase price of said fertilizer as set forth above and the amount represented by what potatoes they have delivered from the crop they raise on their farms in 1923, to equal the full purchase price of the said fertilizer as agreed to above.

"It is agreed, however, by said Buck Brothers that they will deliver the required amount of potatoes specified if they raised the sufficient amount to fulfill this contract out of the 1923 crop."

If the above were a mortgage of the potatoes made the subject matter of this suit in trover, the plaintiff could have sat secure in the knowledge that no holder of a mortgage made subsequent to date of record of the above could convert the property without being answerable in damages.

But the agreement is not a chattel mortgage.  A mortgage of chattels said to have a potential existence, as a crop to be grown by

the mortgagor, during a season named and on a definite area of land, may by a properly written, executed and recorded conveyance give right of possession to the mortgagee after valid foreclosure, and under certain circumstances even before foreclosure. But a mortgage of a crop to be grown, to be thus effective, must so definitely and so certainly state that a lien is given and describe the crop to be grown that the mortgage is notice to the world that another than the grower is the owner of the crop until defeasance is accomplished. Otherwise the holder of the faulty conveyance has no title by virtue of the conveyance.

The agreement in evidence is nothing more than an executory agreement; and under and by virtue of such agreement the relation of the plaintiff to Buck Brothers is only that of an unsecured creditor.

By their undertaking, so far as shown by the contract in evidence, the growers gave no lien on any potatoes and did not apprize all others that they had sold the potatoes in question to the plaintiff. Hence the judgment must be for the defendant.

*So ordered.*