PASSAIC NATIONAL BANK AND TRUST COMPANY, A
NATIONAL BANKING ASSOCIATION, PLAINTIFF, v.
GARRET EELMAN, Sr., MARIE R. EELMAN, GARRETT
EELMAN, Jr., AND WILLIAM C. EELMAN, DEFENDANTS.

Argued July 8, 1935—Decided March 3, 1936.

Before Justice HEHER, at the Passaic Circuit.

For the plaintiff, *Jerome Alper* (*Samuel B. Friedman,* of counsel).

For the defendant Garret Eelman, Sr., and the police and fire pension commission of the city of Passaic, *Joseph J. Weinberger*.

HEHER, J.   The decisive question is whether pension moneys payable to a retired police officer, in semi-monthly installments at the rate of $110.25 per month, from the fund created by and maintained under the provisions of chapter 160 of the laws of 1920 (*Pamph. L., p.* 324), as amended by chapter 171 of the laws of 1935 (*Pamph. L., p.* 405), are the subject of garnishment or levy under the special statutory execution to satisfy a judgment standing against the pensioner.

The inquiry is largely one of statutory construction.   And these are the pertinent statutes:

Section 24 of the act respecting executions, as amended by chapter 99 of the laws of 1933, provides that if, in discovery proceedings had under section 23 of the act, likewise amended by the statute last referred to, it be disclosed that the "judgment debtor is entitled to, and is in receipt of, an income or any property or money or things in action, held in trust for the debtor, except such trust funds as are now exempt by law," the court shall have power "to direct the judgment debtor to make payments at stated periods in installments, and upon such terms and conditions as the said judge may direct, out of such income, on account of said unsatisfied judgment."   2 *Comp. Stat., p.* 2250; *Pamph. L.* 1933, *p.* 204.

Chapter 113 of the laws of 1916, as amended by chapter 102 of the laws of 1933 (the title of which was amended by chapter 214 of the laws of 1935) makes subject to execution, and a "continuing levy" thereunder until the sum due thereon and the incidental expenses shall have been fully satisfied, "the wages, debts, earnings, salary, income from trust funds or profits due or to become due to said judgment debtor," if the amount thereof shall be eighteen dollars or more per week, in the sum prescribed by order of the court in which the judgment was recovered or resides, not to "exceed ten per centum unless the income of said debtor shall exceed the sum

of one thousand dollars per annum," in which case payment of a larger percentage may be directed. *Pamph. L.* 1916, *p.* 242; *Pamph. L.* 1933, *p.* 210; *Pamph. L.* 1935, *p.* 508.

It is argued for the judgment debtor and the pension commission that, from reasons of public policy, "pension moneys are exempt from execution and garnishment while in the hands of the pension commission,"—citing *Seventy-First Street and Broadway Corp.* v. *Thorne,* 10 *N. J. Mis. R.* 99; *Same Case, Id.* 457. It is urged that the statute secondly above mentioned modifies only in respect of the "wages and salaries of public officials" the policy declared in *Schwenk* v. *Wyckoff,* 46 *N. J. Eq.* 560, and *Spencer* v. *Morris,* 67 *N. J. L.* 500, that "the unearned salary or remuneration" payable to the judgment debtor "for official service due to the public" may not be "assigned by him or withdrawn from his use at the instance of creditors;" and that a pension is a "gratuitous allowance" in which the pensioner has no "vested right," and does not fall into any of the statutory categories of "wages, debts, earnings, salary, income from trust funds or profits * * * due and owing to the judgment debtor."

The point is not well made. While a pension is neither "wages, earnings, salary or profits," within the common acceptation and usage of those terms, the pension installments, at least as they accrue, are classable as "debts," within the intendment of the statute. The ordinary legal sense of the term "debt" is an obligation for the payment of money founded upon a contract, express or implied. *Turner* v. *Cole,* 118 *N. J. Eq.* 497. Its technical meaning at common law was "a sum of money due by certain and express agreement"—that for which an action of debt or *indebitatus assumpsit* would lie. 3 *Bl. Com.* 154; *Flanagan* v. *Camden Mutual Insurance Co.,* 25 *N. J. L.* 506. But it is also used in the larger sense of that which one person is bound to pay to another under any form of obligation. *New Jersey Insurance Co.* v. *Meeker,* 37 *Id.* 282, 300. This is its general significance. *Webster's New International Dictionary* (2d ed.). See, also, 17 *C. J.* 1371. It is a word of large import; in its popular signification, it includes all that is due to a

person "under any form of obligation or promise." *Gray* v. *Bennett,* 3 *Metc.* 522, 526.

In the main, the distinguishing characteristic of such an obligation is that it is for a sum certain, or a sum readily reducible to a certainty. *Flanagan* v. *Camden Mutual Insurance Co., supra.* It is an obligation to pay a sum certain, or a sum which may be ascertained by a simple mathematical calculation from known facts, regardless of whether the liability arises from contract or is implied or imposed by law. *Stockwell* v. *United States,* 13 *Wall.* 531; 20 *L. Ed.* 491; *Indian Refining Co.* v. *Taylor,* 195 *Ind.* 223; 143 *N. E. Rep.* 682, 689; *H. G. Kilbourne Co.* v. *Standard Stamp Affixer Co.,* 216 *Mass.* 118; 103 *N. E. Rep.* 469; *State* v. *Latham,* 136 *Tenn.* 30; 188 *S. W. Rep.* 534; 18 *C. J.* 3, 4, 6. Whatever the law enjoins one to pay takes the legal classification of a debt. 3 *Bl. Com.* 158.

The action of debt will lie to enforce obligations created by statute for the payment of a sum certain, or a sum that may readily be made certain. *Cowenhoven* v. *Freeholders,* 44 *N. J. L.* 232; *United States* v. *Chamberlin,* 219 *U. S.* 250; 31 *S. Ct.* 155; 55 *L. Ed.* 204. It lies to recover a statutory penalty, because the sum demanded is certain. *Chaffee* v. *United States,* 18 *Wall.* 516; 21 *L. Ed.* 908. See *Dallas* v. *Hendry,* 3 *N. J. L.* 527. And the term, as used in article 1, section 8, of the federal constitution, investing the congress with power to lay and collect taxes, and to pay "the debts * * * of the United States," has been construed to include claims resting upon "a merely equitable or honorable obligation, and not recoverable in a court of law against an individual." *United States Sugar Equalization Board* v. *P. DeRonde & Co.,* 7 *Fed. Rep.* (2d) 981. It does not matter that the statute imposes the continuing obligation to pay fixed sums at stated intervals. *Faw* v. *Marsteller,* 2 *Cranch* 10, 23; 2 *L. Ed.* 191; *Hoy* v. *Hoy,* 44 *Ill.* 469.

It remains to consider the sense in which the legislature employed this term. The intent of the lawmaker is to be collected from a general view of the whole clause, bearing in mind the occasion and necessity of the law, the mischief felt,

and the remedy in view, and that the words used, while ordinarily given their natural meaning, significance and import, unless terms of art are employed, which are to be given their technical sense, may be enlarged or restricted to effectuate the manifest reason and obvious purpose of the law. Words of doubtful meaning may be made plain by a comparison with other clauses or portions of the same law. *State* v. *Murzda,* 116 *N. J. L.* 219. The word "debt" takes "shades of meaning from the occasion of its use and color from accompanying words." *Morrow* v. *Hayes,* 226 *Mich.* 301; 197 *N. W. Rep.* 554.

Evidently, the legislative purpose was to include all obligations that, like wages and salaries, income from trust funds, and profits, are payable in periodic installments or stated sums at not less than the prescribed minimum rate. It was patently not the intention to limit the operation of the statute strictly to contractual obligations to pay for the judgment debtor's labor or personal service. This is clearly indicated by the inclusion of "debts" and the produce of "trust funds" with wages, salaries and profits "due and owing to the judgment debtor," or which shall thereafter "become due and owing * * * to the amount of eighteen dollars or more per week." The design manifestly was to reach, for the benefit of the creditor, income payable in installments in the minimum amount, if of the species of the enumerated classes. And it was not the purpose to restrict this remedy to obligations arising *ex contractu,* for, by section 2, it is made applicable to salaries of civil officers, state and municipal; and public offices do not have a contractual basis. *Board of Education of Cedar Grove* v. *State Board of Education,* 115 *N. J. L.* 67; 178 *Atl. Rep.* 208. I find no purpose, express or implied, to distinguish between pensions and the forms of income specified in the act. There is no perceivable basis for such a distinction. Of this more hereafter.

A public pension, while not contractual in nature, is of kin to wages and salaries, in that it is payable in stated installments for the maintenance of the servant after his productive years have ended, and is basically a recompense for past ser-

vices. It is fairly within the generic statutory class of income payable periodically to the judgment debtor. It was such that the legislature intended to subject to this special execution. The terms descriptive of the classes of obligations subject to this levy are given character and color by the qualifying clause "to the amount of eighteen dollars or more per week." The associated words indicating the classes, and the qualifying words prescribing the minimum income subject to levy, furnish the key to open the understanding of the statute. There is no discernible reason or policy for not subjecting obligations payable at not less than the designated rate to the claims of creditors, merely because they are not debts in the strict technical sense.

The United States District Court for the Southern District of New York, in construing a like clause in the Installment Execution act of the State of New York, held that a public pension "is not property," but "a bounty or gift," and was not comprehended by the statute. But there the court was dealing with the claim that, inasmuch as the pension right was not an asset of the bankrupt which could be sold by the trustee, the creditor was at liberty to proceed against it, even after the bankrupt's discharge. It was observed that "the periodic payments only become property" in the pensioner's hands "when he actually gets money or money's worth." *In re Hoag*, 227 *Fed. Rep.* 478; *Same Case, Id.* 480. If, by this statement, it was intended to lay down the doctrine that, without an appropriate statutory grant, the pensioner has no absolute and enforceable right to payment of the accrued installment, I regard it as unsound. The rule is that compulsory deductions from the salaries of governmental employes, by the authority of the government, for the support of a pension fund, create no contractual or vested right between such employes and the government, and neither the employes, nor those claiming under them, have any rights except such as are conferred by the statute creating and governing the fund. But where the pension installments mature, the right of the pensioner to payment thereof vests. *Plunkett* v. *Board of Commissioners of Hoboken*, 113 *N. J. L.* 230;

*affirmed,* 114 *Id.* 273; *Pennie* v. *Reis,* 132 *U. S.* 464; 10 *S. Ct.* 149; 33 *L. Ed.* 426. This is an obligation imposed by the subsisting statute maintaining and governing the pension fund, and logically falls into the category of obligations enforceable in an action of debt at the common law. 3 *Bl. Com.* 158.

While the pension statute subsists, the obligation to pay the periodic installments continues by force thereof. I can perceive no rational basis for a distinction, in respect of this special execution statute, between installments payable under the Pension act and a contract of hire. The obligation to pay the pension is fixed while the statute exists. While the legislature may repeal or modify the act, and thus terminate the pensioner's right to unaccrued installments, so may the private employer terminate the contract of hire for an indefinite term, and thus relieve himself of obligations to arise *in futuro.* But the installments of salary or wages that may accrue while the contract subsists are nevertheless subject to this form of execution.

And there is no declared public policy in this state that, in the absence of specific statutory provision to the contrary, exempts such pension moneys from the claims of the pensioner's creditors. The rule against the assignment of the "unearned salary or remuneration" of a civil servant, and its withdrawal from his use for the benefit of creditors, is grounded upon the theory that the deprivation or diminution of the economic security afforded the servant by the stipulated salary would prejudice the public service. *Schwenk* v. *Wyckoff, supra.* See, also, 56 *A. L. R.* 604, *et seq.* And this was likewise the underlying reason for such exemption of pensions for past services. Public policy imposed this as a safeguard only when the pensioner was liable to calls for active duty, and was therefore to be regarded as still in the service of the government. Even then, it seems, the protection did not extend to the individual installment after the accrual of the right thereto. See *Schwenk* v. *Wyckoff, supra.*

But now, by force of the statute referred to, this exemption of unearned salary from execution or like process has been

modified by the Special Execution act referred to. See *Petersen* v. *Jersey City,* 89 *N. J. L.* 93; *Oetjen* v. *Hintemann,* 91 *Id.* 429. The statute, in the exemption of incomes below the prescribed minimum and by the provisions limiting the amount to be made available for creditors, affords what, in the legislative judgment, is ample protection against want; these provisions embody the prevailing policy.

The general, if not the exclusive, test of the liability of a right or claim to garnishment is whether it is the subject of assignment. 28 *C. J.* 151. And it is the settled rule that, in the absence of a prohibitory statute, a pension granted for past services is assignable, if the pensioner is not subject to call for further public service when the occasion demands. *Wilcox* v. *Tyrell,* 3 *Ex. D.* 323; *Wells* v. *Foster,* 8 *M. & W.* 149, 151; *Reprint* 987; 48 *C. J.* 792.

The exemption of public pensions, as such, from liability to execution and garnishment is ordinarily derived from statute. 25 *C. J.* 77, *et seq.* See *Jardain* v. *Fairton Saving Fund and Building Association,* 44 *N. J. L.* 376; *McIntosh* v. *Aubrey,* 185 *U. S.* 122; 22 *S. Ct.* 561; 46 *L. Ed.* 834. And it is noteworthy that in several statutes of like kind exemption clauses were incorporated. *Pamph. L.* 1914, *p.* 244; *Pamph. L.* 1915, *p.* 872; *Pamph. L.* 1915, *p.* 581; *Pamph. L.* 1927, *p.* 218. It is therefore reasonable to assume that its omission from the pension statute in question was significant and purposeful.

While not apposite when the public interest dictates a different course, it is the general policy of the law to lend the creditor all reasonable assistance for the enforcement of his claim, especially against a debtor who, though possessed of the means to pay, seeks to evade his obligation.

Moreover, assuming the inapplicability of this act, these accruing pension installments are clearly "income" within the intendment of the supplementary execution statute. It was not the legislative purpose, by the amendment of the special execution statute of 1916, *supra,* to repeal section 24 of the Execution act, *supra.* This is demonstrated by the amendment of these sections by companion measures enacted

on April 10th, 1933 (*Pamph. L.* 1933, *pp.* 204, 210), to eliminate only the provision for the return of an execution unsatisfied as a prerequisite to action thereunder. These statutes are *in pari materia*, and are to be reasonably construed together, so as to consistently effectuate the general legislative policy.

While it would seem that the immunity of official salary to garnishment still obtains where the amount is less than $18 per week (*Oetjen* v. *Hintemann, supra*), pension payments may be reached under section 24 of the Execution act, for this does not, as has been shown, violate any rule of public policy where the pensioner does not remain subject to further calls for public service. There is implicit in this statute also the policy that the debtor shall not be deprived of sustenance.

It follows that plaintiff is entitled to have ten per cent. of each accruing pension installment applied to the payment of its judgment, and an appropriate order, carrying costs, may be entered.