### NEW ENGLAND MERCHANTS NATIONAL BANK OF BOSTON

### v.

### Donald M. HERRON and Maine State Retirement System.

Supreme Judicial Court of Maine.

June 29, 1968.

John Flaherty and Christopher A. Moen, Jr., Portland, for appellant.

Joseph E. Brennan, Portland, for appellees.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, and WEATHERBEE, JJ.

MARDEN, Justice.

On report, upon agreed statement of facts and exhibit.

The defendant, after completion of more than twenty years of active service as a member of the Maine State Police, was retired from the service in good standing on January 10, 1959. Upon retirement he became entitled to pension benefits under the provisions of Sections 22 and 23 of Chapter 15 of the Revised Statutes of 1954[1] (now 25 M.R.S.A. §§ 1591 et seq.) and received them.

On June 10, 1963, for present consideration, he assigned in writing to the plaintiff bank his future benefits as security for a loan. This assignment was consented to in writing on behalf of the State of Maine. From June 10, 1963 until January 20, 1967, regular weekly pension payments were forwarded by the State Police Department directly to the plaintiff, the pension fund being a part of the annual budget of the State Police Department, as distinct from other State funds.

On January 27, 1967 the defendant filed a voluntary petition in bankruptcy, which proceeding is presently pending. On the schedules filed by the bankrupt, the claim of the plaintiff was listed as a claim secured by "assignment of state pension."

In March of 1967 the State Police Department, which had theretofore transmitted the pension payments, as they became due the defendant, directly to plaintiff, ceased to do so, and on May 3, 1967 plaintiff complained against the defendant and the Maine State Retirement System, to enforce its rights under the assignment. The Maine State Retirement System not being a proper party, the complaint as to it has been dismissed, but no question is raised but that an appropriate fiscal officer recognized the assignment.

Plaintiff contends that it holds a valid assignment of defendant's benefits under the State Police Retirement System, that it is entitled to enforce it and that the defendant's discharge in bankruptcy of the underlying debt would not preclude plaintiff's enforcement of the lien created by the assignment.

Defendant contends that the controversy is within the sole jurisdiction of the bankruptcy court and that a discharge in bankruptcy of the underlying debt would result in the alleged assignment being unenforceable.

---

1. State Police Retirement System.

"*Sec. 22. State police retirement system; limitation.*—Any member of the State Police who shall have served as a member thereof for 20 or more years with a good record shall upon request in writing to the Chief of the State Police be retired from active service and placed upon the pension rolls, and receive there-after ½ of the pay per year that is paid to a member of his grade at the time of his retirement. \* \* \*."

"*Sec. 23. Provision for payment.*— \* \* \* Any person convicted of a felony while receiving a pension under the provisions of this section shall forfeit such pension."

We view the issues as being:

I. Does plaintiff have a lien upon the pension payments to which defendant is entitled?

A. Are the pension payments assignable?

   1. Under common law principles?

   2. Contrary to statute or public policy?

II. If plaintiff has a lien does it survive the bankruptcy of the defendant?

A. Does discharge in bankruptcy of the underlying debt, prevent enforcement of the lien?

*I Has a valid lien been created?*

Petitioner has qualified for benefits under the statute, subject only to survival of the successive dates of payment and the condition subsequent established in Section 23. He is obligated to render no further service. His right to the payments is fixed. The early common law proscription against the assignment of such rights, based upon the theory that a transfer of such rights was champerty or maintenance, has long since disappeared and Maine has for many years recognized that the assignment of that which is in "existence, actual or potential" is valid at law and courts of equity have supported assignments of "contingent interests and expectations" Edwards v. Peterson, 80 Me. 367, 371, 14 A. 936; and Harlow v. City of Bangor, 96 Me. 294, 297, 52 A. 638, subject only to statutory prohibition or contravention of public policy. A chattel mortgage may be given on future crops, Corinna Seed Potato Farms, Inc. v. Corinna Trust Company, 125 Me. 131, 134, 131 A. 307; and after acquired property, Williams v. Noyes

& Nutter Manufacturing Company, 112 Me. 408, 412, 92 A. 482, 484.

The statute providing for this pension has no prohibition on its assignability.[2] One text makes the flat statement:

"Except where prohibited by statute, a pension granted for past service may be assigned." 70 C.J.S. Pensions § 9.

See also Passaic Nat. Bank & Trust Co. v. Eelman et al., 116 N.J.L. 279, 183 A. 677 (1936).

What of public policy? The public policy considerations involved are expressed in Local Loan Company v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), where, in holding an assignment of future wages as not constituting a lien within the meaning of § 67(d) of the Bankruptcy Act,[3] the court said that such an assignment is a pledge of future earning power, that to preserve its free exercise is of utmost importance, and a matter of great public concern, and held (page 245, 54 S.Ct. page 699):

"(A)n assignment of wages earned after bankruptcy as being destructive of the purpose and spirit of the Bankruptcy Act."

No case has been called to our attention, nor have we found any, which applies this expression of public policy to the facts at hand.

"A somewhat analogous problem arises where the debtor has executed a mortgage on future crops or an assignment of an expectancy. In states which hold that a mortgage of future crops or an assignment of an expectancy does not create any lien or charge until the crops or the expectancy actually come into existence, it is held that the discharge of the underlying debt prevents a lien from attaching

---

**2.** Absence of such prohibition is significant where the State Retirement System under 5 M.R.S.A. § 1001 et seq. provides in § 1003 that retirement allowances thereunder "shall not be subject to execution, garnishment, attachment or any other process whatsoever, and shall be unassignable except as this chapter specifically provides." There is no exception.

**3.** Which then read: "Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this Act." U.S.C. Title 11, § 107(d).

at the time the crops come into existence or the expectancy vests, since there is no debt to support a lien. On the other hand, in states where it is held that such a mortgage or assignment does create a lien on after-acquired property as of the original date of the mortgage or assignment, despite the fact that the underlying debt has been discharged, the question is then presented whether such a doctrine conflicts with the policy of the Bankruptcy Act and should be overridden. The Supreme Court has not yet decided this question, but by the present weight of authority among the states there is no conflict of policy and the state law will control." Collier On Bankruptcy 14th Edition ¶ 17.-30, at page 1740 et seq.

See also Annot. 73 A.L.R. 1063.

The public policy announced in *Hunt* reflected the thinking of the Court in 1934 and implies that permitting a wage earner to assign future earnings would seem to reduce him to a state of peonage and be contrary to public policy. The reverse side of the coin is that by means of such assignment he may obtain new credit which may enable him to create new income and new economic power.

"Denial of that power however, is a denial of credit in a world of credit." Corbin on Contracts, Vol. 4 § 908, at page 641.

In the instant case there is no commitment of future earnings. The pension benefits have been already earned and their assignment cannot be equated with the assignor's subsequent earning power. We find no contravention of public policy in this assignment. See also *Eelman,* supra [7] 183 A. at page 680.

Corbin on Contracts, Vol. 6A § 1427 confirms, by negative expression, assignability of a pension under the facts of this case by pointing out that some claims cannot be assigned, including "claims to a public pension if it is one for which some public service may still be required." [4] The rationale of this exception is that public service would be prejudiced if the pension benefits payable for past and present service were burdened with assignments. See *Eelman,* supra, [7] at page 680.

■ Plaintiff has a lien under Maine law on the pension benefits. See In re Kobiela, D.C., 152 F.Supp. 489, [4] 491, and Shiro v. Drew, D.C., 174 F.Supp. 495, [1, 2] 497.

### II Does the lien survive defendant's bankruptcy?

While the Bankruptcy Act formerly declared in affirmative terms (see footnote 3) that qualified liens would be honored by the Bankruptcy Act, the present Section 67 (11 U.S.C. § 107) does so by exclusionary terms, as follows:

"a. (1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this Act * * *."

■ Plaintiff's lien is not one rendered invalid by the terms of the Act. See In re North Atlantic and Gulf Steamship Company, 204 F.Supp. 899, [1] 904, (D.C.S.D. N.Y.1962), affirmed sub nom Schilling, Trustee v. A/S D/S Dannebrog, 2 Cir., 320 F.2d 628, [1] 629.

■ We then come to the final issues, under which defendant urges a) that the State court has no jurisdiction, and b) that the debt underlying the assignment is dischargeable in bankruptcy and that if so discharged, the assignment will become unenforceable. That the underlying debt is one provable and dischargeable in bankruptcy is not in dispute. In this area we find ourselves being asked, in substance, to declare

---

4. Citing Restatement, Contracts, § 547.

a judgment, for the defendant's bankruptcy proceeding is pending and a discharge has neither been granted nor denied. In this connection we are to be reminded that a discharge in bankruptcy "is not a payment or extinguishment of the debt; it is simply a bar to all future legal proceedings for the enforcement of the discharged debt." Collier, supra, ¶ 17.27 at page 1717,—to which must be added, against the debtor.

"It follows, therefore, that a valid lien on property of the bankrupt existing at the time of the adjudication in bankruptcy, which is not avoided by the Bankruptcy Act, may be enforced notwithstanding the discharge of the bankrupt." Collier, supra, ¶ 17.29 at page 1735.

See also quotation from Collier, supra, ¶ 17.-30 at page 1740 et seq., and Smith v. Davis et al., 131 Me. 9, 158 A. 359, 81 A.L.R. 78.

As to the matter of jurisdiction we suggest, with all deference, that the pension benefits never became *in custodia legis* (See In re Lion Overall Co., 48 F.Supp. 442 (D.C. S.D.N.Y.1942)), and if the defendant's pension benefits be considered assets falling within the responsibility of the trustee in bankruptcy, such trustee takes them subject to all valid liens, In re North Atlantic and Gulf Steamship Company, supra, 204 F. Supp. [1] at page 904. Additionally, no representative of the bankrupt's estate has found this proceeding to be within his official interest.

Whether or not defendant receives a discharge in bankruptcy, plaintiff is entitled to enforce his lien, but if defendant receives a discharge in bankruptcy, a perpetual stay of proceedings and execution upon any judgment against the defendant is to be ordered. *Smith,* supra, 131 Me. at page 11, 158 A. 359.

The case is remanded to the Superior Court for proceedings not inconsistent with this opinion.

So ordered.

DUFRESNE, J., did not sit.