SEVENTY-FIRST STREET AND BROADWAY CORPORATION,
A CORPORATION, PLAINTIFF, v. THOMAS R. THORNE,
DEFENDANT.

Decided January 12, 1932

For the plaintiff, *Insley, Vreeland & Decker.*

For the defendant, *Wall, Haight, Carey & Hartpence.*

ACKERSON, S. C. C.   Plaintiff instituted the above entitled
action by attachment issued out of this court on March 19th,
1931, by virtue of which the proper officers attached the al-
leged right of the defendant in a pension or retirement fund
alleged to be a debt in the hands of the International Mer-
cantile Marine Company and the trustees of the pension fund
of the International Mercantile Marine Company, "valued
at $400 per month" according to the return to the writ, the
defendant being a retired employe of said company and bene-
ficiary of said monthly pension.   The defendant filed a gen-
eral appearance but took no further steps in the action and
judgment was entered in favor of the plaintiff for $8,181.30,
together with costs taxed at $73,36, whereupon a writ of *scire
facias* was taken out of this court on August 7th, 1931, com-
manding the International Mercantile Marine Company and
the trustees of the pension fund of said company as gar-
nishees, to show cause why the plaintiff should not have
execution of the aforesaid money alleged to be due the de-
fendant, and in their hands attached, according to the statute
in such case made and provided.

The said International Mercantile Marine Company (hereinafter referred to as the company) and the trustees of the pension fund of the International Mercantile Marine Company (hereinafter referred to as the trustees), have filed a joint return to the writ of *scire facias,* in which said company denies that any sum is due and owing by it to the defendant, Thorne, and asserts that the only payments made to him since December 30th, 1930, have been from the pension fund administered by the trustees separate and apart from the company.

The trustees allege in the return that they "confess the amount due from them to the above named defendant, pursuant to the terms and conditions of the rules and regulations of the said pension fund, *  *.  *  to wit, the sum of $1,847.05, made up as follows: Payments due under pension fund for the months of March, April, May, June and July, 1931, at the rate of $369.41 per month." But they proceed to set up three defenses to the plaintiff's claim upon said funds, viz., (a) that under the rules and regulations governing said pension fund, the defendant, Thorne, has no right or credit therein which is subject to attachment or execution; (b) that this court has no jurisdiction over said pension fund; (c) that said fund is exempt from attachment, execution, levy or seizure by any alleged creditor of the defendant as a beneficiary of said fund.

The plaintiff now moves to dismiss this entire return for the following reasons:

"1. That the same is insufficient in law.

"2. That the sum of one thousand eight hundred and forty-seven dollars and five cents ($1,847.05) is admittedly due and owing to the defendant.

"3. That the trustees cannot exercise their discretion for the benefit of the debtor and to the detriment of the plaintiff herein.

"4. That the matters and things set forth in the said return are matters and things which should be raised by the defendant who has entered an appearance herein.

"5. That no matter or thing set forth in the said return is legally sufficient to bar the said writ of *scire facias.*"

Since the motion seeks to strike out the entire return, it is obvious that if any part thereof presents a defense, the whole cannot be stricken out. *Malone* v. *Brotherhood,* 94 *N. J. L.* 347.

In the first place it must be noticed that the motion is not directed to the form of the return, so I am not called upon to consider that question.

The plaintiff insists that the defendant, Thorne, is the only one who could properly raise the above mentioned defenses, and that as he failed to do so the garnishees are bound by the judgment in the main action. It is well settled, however, that a garnishee is entitled to set up that the debt or property which it is sought to reach is not such as may be reached by the process of garnishment, and that same is exempt from attachment. 28 *C. J.* 285, §§ 413, 414. The garnishee may also question the court's jurisdiction of the subject of the action. *Ibid.* 277, § 392; *Welsh* v. *Blackwell,* 15 *N. J. L.* 55. The criticized defenses go no further than this and the garnishees may, therefore, raise them in this manner.

As already indicated, the International Mercantile Marine Company has denied that any sum is due and owing the defendant, and the copy of the rules and regulations of the pension fund, annexed to the return and also furnished by the plaintiff itself, show this to be true. The only connection which the company has with the pension fund, so far as the proofs show, is in the contributions which it makes to the fund equal in amount to that of the employes of the company. By section 13 of the rules and regulations, the control and management of the pension fund is entirely in the hands of designated trustees and the company has nothing whatever to do with it. So it is evident that the plaintiff has not shown this defense to be insufficient in law or untrue in fact, and it is, therefore, a good defense so far as the company is concerned. It follows, therefore, that since the company and the trustees have joined in filing a joint return or answer to the writ of *scire facias,* and the motion is to strike

out the entire return as to the garnishees jointly, the motion cannot be granted as this one defense, at least is found to be properly pleaded. *Malone* v. *Brotherhood, supra.*

I am unwilling, however, to dispose of the motion without noticing a further question of considerable interest. This question is raised by the defense interposed by the trustees to the effect that under the rules and regulations of the pension fund, the defendant has no right or credit which is subject to attachment or execution.

It appears from the rules and regulations governing the pension fund, that it was created to provide pensions in old age for the officers and employes of the company, who subscribe to the provisions, and is made up by contributions from the members of two and one-half per cent. of their annual salaries; and contributions from the company of sums equal to the annual contributions of all the members.

The provisions of the rules and regulations particularly applicable to the question now being considered are the following:

"Retiring age. The trustees shall have full power to decide when a member who, having been retired from the company's service, may become a beneficiary of the fund, and the extent of his participation in such fund or its avails; except that any member having attained the age of sixty-five years and who shall have been in the employ of the company twenty-five years or more, and who retires from the company's service, shall, on his own application become a beneficiary of the fund as provided in paragraph 6th hereof, and such member shall receive a pension for life.

"Pension. The amount payable annually to retired beneficiaries shall be two per cent. of the average annual salary, not in excess of $7,150, for five years previous to the time of retirement, multiplied by the number of years he shall have been in the service of the company up to the time of retirement, provided, however, that no pension shall exceed seven-tenths of the said average salary or exceed $5,000. Such payment shall be made monthly.

"Control of fund. The management and control of this fund, and interpretation of these rules and regulations and the determination of any question arising in connection with either shall rest entirely with the trustees, and their decision or action in respect thereof shall be final and conclusive upon any of the members or persons entitled to receive any benefits from such fund under the rules and regulations, and no member, beneficiary or other person shall have any rights in or to any part of the fund, except as and to the extent expressly provided by the rules and regulations. The fund may be invested in any form of security which in the opinion of the trustees shall be deemed for the best interest of the beneficiaries thereof, without being limited to such investments as are designated as trustees' investments.

"Payments. No payments shall be made from the fund until approved and ordered by the trustees.

"Limitation. It is understood by all members and the benefiiciaries and by the trustees as a condition to the undertaking by the trustees of the administration of the pension fund hereunder, that no rights are conferred upon any person or party hereunder other than as are expressly stated in these rules and regulations, or as they may be amended or altered from time to time, and as they may be construed by the trustees.

"Assignments. Pension allowances shall be non-assignable and any transfer or pledge of same will not be recognized by the trustees and shall in the discretion of the trustees act as a forfeiture of the pension."

It is also well to notice that it seems to be undisputed that the defendant, Thorne, during his employment by the company made contributions to the pension fund to the amount of $1,337.82, and since his retirement has received from the fund payments amounting to $18,470.82.

"Rights and credits" of a debtor may be attached or taken on execution. 1 *Comp. Stat.,* p. 133; *Pamph. L.* 1915, p. 182. Such terms, however, although very broad and comprehensive, do not, as used in the garnishment statutes, in-

clude every kind of interest that a defendant may have in property. 28 *C. J.* 151.

Probably the most general test as to whether property is of such a nature that it may be reached by garnishment is whether it is capable of assignment by the defendant debtor. 28 *C. J.* 151, and cases cited in footnote. Measured by this test it is quite evident that the pension payments in question cannot be reached by these proceedings, for the foregoing provisions of the rules and regulations clearly establish a purpose that no one other than a beneficiary of the fund shall receive payment thereunder.

It may be claimed, however, that the efficacy of the foregoing test is limited in this state by the decision in *Fleming* v. *Fleming Hotel Co.,* 69 *N. J. Eq.* 715, wherein it was held that a covenant not to sell or assign a lease is not broken where the assignment is by operation of law, and that an assignment of a lease, with such a covenant, by the receiver of a lessee, as the agent of the law to a purchaser of the leasehold interest would not work a forfeiture. That such a covenant only applies to voluntary sales, and is not subject to forfeiture unless the proceedings at law under which the leasehold interest is disposed of were voluntary and collusive with a view to defraud the landlord of his rights. I do not believe, however, that this decision militates against the applicability of the general test to the present situation for many reasons.

In the first place the reason assigned for the rule in the case of the assignment of leaseholds is that to hold otherwise would in effect permit the creation of valuable interests in lessees which may be held by them in defiance of creditors, but the same reason does not hold with equal force in the case of pension intsallments derived from a fund created by small contributions from hundreds of employes and doubled by the employer over a course of years, and where the employe is likely to draw, as in the case *sub judice,* much more from the fund than he puts in. The whole scheme of such pension funds is opposed to fraudulent practices against creditors.

In the case of a covenant against the assignment of a lease, the main purpose of the lease, so far as the landlord is concerned, is to obtain an income from the real estate and a transfer of the lease, although without his consent, is not contrary to the general purpose of the contract. But in the case of an industrial pension fund, the whole purpose of which is to provide an income in old age for retired employes, so as to prevent them from becoming a burden on society, the diversion of such funds to other uses would destroy the whole purpose of their creation.

Furthermore in the case of covenants against assignments in leases the courts, in the interpretation thereof, are called upon to decide between a policy which will protect only the lessor, or a policy which will protect creditors of the lessee, and ordinarily work no appreciable hardship to the lessor. In the case of pension funds, however, so long as installments therefrom have not been turned over to the beneficiaries, the present policy of encouraging old age pensions should predominate, and should outweigh the consideration of creditors, who would otherwise derive a benefit from contributions made largely by others, which the parties directly concerned had endeavored in their contract to preserve for the exclusive purpose of caring for members of their class, who through economic conditions have not been in a position to acquire reserve assets against the diminishing earning power of old age. In such a situation the courts should hesitate to interpret a provision that such "pension allowances shall be non-assignable and any transfer or pledge of same will not be recognized by the trustees of the fund," as applying only to voluntary assignments or transfers, especially where the creative contract, as in the case *sub judice,* provides that "the management and control of this fund, and interpretation of these rules and regulations and the determination of any question arising in connection with either shall rest entirely with the trustees, and their decision or action in respect thereof shall be final and conclusive," and where the trustees, as here, have stopped payment of such pension allowances.

The proceeding by garnishment is for the purpose of effecting a compulsory assignment of a claim by process of law. It seems to me, therefore, that in a situation such as that now before us, where the claim is of such a nature that the claimant cannot make a voluntary assignment of it, the law should not enforce a compulsory assignment. *St. Joseph Manufacturing Co.* v. *Miller,* 69 *Wis.* 389; 34 *N. W. Rep.* 235.

Pension moneys and bounties granted by the government for enlistment, or for service in the army, navy or civil department of the government have always been held not subject to garnishment while in the hands of the government irrespective of statutory protection. 28 *C. J.* 187; *Manchester* v. *Burns,* 45 *N. H.* 482.

The reason for the rule is public policy. It was thought that a contrary rule would discourage enlistment in such services. It seems to me that under pressure of present economic conditions, where a premium is put upon youth, that a similar public policy should protect from dissipation reasonable pension funds created for the protection of low or medium salaried industrial employes in their old age, through the medium of contributions from a large class of such employes augmented by more substantial contributions from the employer.

For the reasons already stated, I am forced to conclude that the defendant has no right or credit in the pension fund in question which is subject to attachment or execution, and that the funds sought to be reached are exempt from garnishment. This is, therefore, another reason why the entire return cannot be stricken out, and it becomes unnecessary to consider the further question of whether the court has jurisdiction over this pension fund. The motion is therefore denied, without costs.