ESSEX COUNTY COURT OF COMMON PLEAS.

JULIUS OTTEN, PLAINTIFF, v. MAXIMILIAN E. CAVALLI, DEFENDANT.

Decided April 24, 1936.

For the plaintiff, *Joseph A. Furrey.*

For the defendant, *James H. McLeod.*

For the *garnishee, Wall, Haight, Carey & Hartpence.*

HARTSHORNE, J. The question arises, on motion to quash an execution levy, as to whether insurance policy proceeds payable in annual installments are subject to garnishment proceedings, particularly when such annual installments, if paid weekly, would amount to less than $18 per week.

While a question is raised as to the right of the garnisheed insurance company to move to quash, this will be passed over, in view of the representation to the court that if same were considered material, exactly the same action would be taken by the defendant himself, who, in fact, does raise the meritorious questions.

As stated in the very recent case of *Passaic National Bank and Trust Co.* v. *Eelman,* 116 *N. J. L.* 279; 183 *Atl. Rep.* 677, N. J., "it is the general policy of the law to lend the creditor all reasonable assistance for the enforcement of his claim, especially against a debtor who, though possessed of the means to pay, seeks to evade his obligation." Against

this it is urged, first, that the policy contract, by its terms, prevents a garnishment; and, second, that such garnishment is against public policy. Such constitutes the main issue.

It must be borne in mind that the policy contract in question is not the original policy on the life of the insured, but is a contract between the company and the beneficiary in the original policy, as to how the proceeds of such original policy shall be paid such beneficiary, the defendant here. It provides, "no assignment or hypothecation of this contract, or of any part thereof, or interest therein, or of any installment accruing thereon, made by said beneficiary, shall be valid, and no payment shall be made by the company during the lifetime of the beneficiary, except to said beneficiary, personally, or upon his order for each payment as the same may become due." Reliance thereupon is had on the case of *Seventy-First Street and Broadway Corp.* v. *Thorne,* 10 *N. J. Mis. R.* 99; 157 *Atl. Rep.* 851, holding that payments from a private corporation pension fund, not assignable by the fund rules, are not garnishable on attachment. This case, however, has been substantially overruled by *Passaic National Bank and Trust Co.* v. *Eelman, supra,* holding that even a public pension fund payment is garnishable, at least "where the pensioner does not remain subject to further calls for public service." Of course, a pensioner from a private corporation neither is, nor was, subject to such call. Further, while the *Eelman* case does say that "the general, if not the exclusive, test of the liability of a right or claim to garnishment is whether it is the subject of assignment," its citation thereunder (28 *C. J.* 151) gives as the "Reason for the Rule"—"It is entirely obvious that if a claim be of such a nature that the claimant cannot make a voluntary assignment of it, the law will not enforce a compulsory assignment," citing *St. Joseph Manufacturing Co.* v. *Miller* (*Wis.*), 34 *N. W. Rep.* 235. A reading of this last case makes it clear that it is the inherent nature of the claim itself, and not any peculiar inter-party restrictions, which restrict the normal rights of third parties. This is for the reason that an inherently unassignable *res,* such as the unassignable tort in the above Wisconsin case, obviously cannot be assigned at all,

either by the parties or by operation of law. But, on the other hand, a *res* which can ordinarily be assigned, such as the mere obligation here to pay money, and is only restricted by the parties, against assignment by such parties, is not restricted against assignment by an entirely different method; to wit, by operation of law at the instance of third parties. *Fleming* v. *Fleming Hotel Co.*, 69 *N. J. Eq.* 715; 61 *Atl. Rep.* 157; 28 *C. J.* 151, *tit. "Garnishment."* Further be it noted that while assignment of the policy contract in question by the beneficiary is generally prohibited, such assignment by him is permitted "upon his [the beneficiary's] order for each payment as the same may become due." The levy here, being upon a payment coming due a few days thereafter and before the return day of the writ of execution, would, consequently, seem not to contravene even the terms fixed by the parties for themselves.

The second objection to the garnishment is that to garnish such insurance proceeds at all is against public policy. Except as definitely established in the common law as inherited by this country or the constitution, this somewhat nebulous entity is not for the courts but the legislature to declare, the latter, of course, having the right to modify such common law public policy. *Dimick* v. *Metropolitan Life Insurance Co.*, 69 *N. J. L.* 384, 396; 55 *Atl. Rep.* 291; *Bigelow* v. *Old Dominion Copper Co.*, 74 *N. J. Eq.* 457, 508; 71 *Atl. Rep.* 153. While certain other states may have protected insurance policy proceeds from the reach of creditors of the beneficiary, the action of their legislatures does not apply here. On the contrary, our legislature has clearly expressed the public policy of this state, and apparently to the contrary. For while insurance policy proceeds are expressly exempted from seizure by creditors of the insured, except to the extent of premiums paid in fraud of such creditors, the exemption goes no further. *Pamph. L.* 1909, *p.* 422; 2 *Comp. Stat., p.* 2850, § 38. Tuberculosis act. *"Expressio unius est exclusio alterius."* And, surely, if payment by the public to a former servant of the public is not exempt on grounds of public policy, except as same may interfere with further service to the public (*Passaic National Bank and Trust Co.* v. *Eelman,*

*supra*), payment by a private corporation in return for no service, public or private, cannot be so exempted, further than the legislature has required.

The further objections to the levy may be more briefly disposed of. As to the objection that same was untimely, note that the supplement to the Execution act, under which the levy was made, provides for same on debts "due *or* accruing." *Pamph. L.* 1915, *p.* 183, § 9; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 1207, § 71-9i, 9. An installment of the proceeds was accruing at the time of the levy, since it fell due shortly after the levy and shortly before the return day of the writ. Nor was such installment at all contingent so as to bring it within the rule laid down in *Riegelhaupt* v. *Russow,* 13 *N. J. Mis. R.* 278; 177 *Atl. Rep.* 878. Should the beneficiary, perchance, have died on the day between the levy and the day of payment, it would, by the terms of the policy, have been payable to his estate.

The final objection is that, since the amount of the annual installment, $300, would, if payable in equal weekly installments, be less than $18 a week, it is not leviable at all. This amounts to saying that no person in receipt of a weekly income of less than $18 a week is subject to execution in the State of New Jersey. In other words, one might be in possession of thousands of acres of unimproved land, and land poor, and yet his creditors could take no steps to reach these assets. Such an intention is not lightly to be ascribed to our legislature; nor does a glance at our Execution acts rationally support any such interpretation. These acts fall into three main categories, each independent of the other. First, we have the original acts respecting executions as amended and embodied in the 1910 Compiled Statutes (2 *Comp. Stat.* 1910, *p.* 2242). Thereunder, after discovery proceedings in the court issuing the execution, a garnishee may, on notice, be forbidden to transfer the debt, and the judgment debtor ordered to pay it. Next, we have the proceedings under the supplement to the above act (*Pamph. L.* 1915, *ch.* 115, *p.* 182; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 1205, § 71-9b, 2), under which the present proceedings were apparently taken. This statute permits a levy even on equitable choses in action (section 2), and, after levy on

the garnishee, permits an order on notice "requiring the garnishee to pay said debt." Finally, we have the eighteen-dollar a week statute, so-called, enacted but two weeks after the latter of the above statutes, and setting up an entirely different procedure therefrom, authorizing an order on the third party to pay *without notice,* but only obtainable if the income equals or exceeds $18 a week. *Pamph. L.* 1915, *ch.* 266, *p.* 470; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 1207, § 71-91, as amended by *Pamph. L.* 1933, *ch.* 102, *p.* 210; *N. J. Stat. Annual* 1933, *p.* 146, § 71-91. In fact, this amendment to this last statute was enacted the very day that the final amendment to the first of the above statutes was enacted. *Pamph. L.* 1933, *ch.* 99, *p.* 204; *N. J. Stat. Annual* 1933, *p.* 147, § 71-23. Both the fact that the procedures in these three statutes are different, and the respective times of their enactment, clearly establish the legislative intent that they are concurrent, not exclusive, remedies, and that the limitations set up in one do not ordinarily apply to the others. Again, in view of the fact that an express exemption clause exists, applicable in terms to "any execution or civil process whatever" (2 *Comp. Stat.* 1910, *tit. "Executions." p.* 2245, *art.* 3, § 10), it is even clearer that the $18 a week limitation applies only to proceedings under the act creating such limitation, and not to the act under which the instant proceedings are taken.

Finally, the interesting point in this entire situation, so technically presented by counsel, is that the original judgment in the District Court, now docketed here, to collect which this execution was issued, was in the stupendous sum of $33. But justice must be served, and the motion to quash will be denied.